Filed 1/6/23 In re R.D. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

| | |
|---|---|
| In re R.D., a Person Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, | E079042 |
| Plaintiff and Respondent, | (Super.Ct.No. RIJ2000454) |
| v. | OPINION |
| B.F. et al., | |
| Defendants and Appellants. | |

APPEAL from the Superior Court of Riverside County. Cheryl C. Murphy, Judge. Conditionally reversed with directions.

Donna P. Chirco, by appointment of the Court of Appeal, for Defendant and Appellant, B.F.

Jesse McGowan, by appointment of the Court of Appeal, for Defendant and Appellant, C.D.

1

Minh C. Tran, Teresa K.B. Beecham and Melinda H. Frey, Deputy County Counsel, for Plaintiff and Respondent.

## I. INTRODUCTION

R.D. was detained and removed from her parents, B.F. (Mother) and C.D. (Father), shortly after birth. The juvenile court terminated Mother's and Father's parental rights after a contested hearing pursuant to Welfare and Institutions Code[1] section 366.26. Mother and Father appeal from this order, arguing that the matter must be conditionally reversed and remanded because the juvenile court, as well as the Riverside County Department of Social Services (department), failed to discharge their duties of inquiry under the Indian Child Welfare Act of 1978 (ICWA; 25 U.S.C. § 1901 et seq.). The department has also filed a motion requesting that we augment the record, consider postjudgment evidence, and dismiss the appeal as moot. We deny the department's motion, agree with appellants that the record does not support a finding that the department fulfilled its duty of inquiry under the ICWA, and conditionally reverse the order terminating parental rights.

## II. FACTS AND PROCEDURAL HISTORY

Mother and Father are the parents of R.D. Shortly after birth, R.D. was taken into protective custody by the department when both she and Mother tested positive for illicit substances. The department filed a petition on behalf of R.D. pursuant to section 300, subdivision (b)(1), against both Mother and Father, alleging that their general neglect

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

2

created a substantial risk that R.D. would face serious physical harm. Throughout the course of the dependency proceedings, Mother and Father repeatedly denied knowledge of any Native American ancestry, including in response to inquiries by social workers, in written ICWA-020 forms signed under penalty of perjury, and in a written stipulation submitted to the juvenile court by counsel.

However, the record also shows that the department was made aware of and provided contact information for other family members. The department assessed both the maternal grandmother and paternal grandmother for placement and eventually placed R.D. with her maternal grandmother. Additionally, the maternal grandmother reported that she maintained a "close relationship," which included "phone, and in-person contact" with multiple family members who lived in the same city as maternal grandmother, including the maternal great-grandmother and two maternal grand uncles. None of the department's reports documented any attempts to inquire of either grandmother as to whether R.D. had Native American ancestry or any efforts to contact the additional relatives identified by the maternal grandmother for the purpose of conducting an ICWA inquiry.

At a 12-month review hearing, the juvenile court terminated reunification services for both Mother and Father, made a finding that ICWA did not apply, and set the matter for a permanency planning hearing pursuant to section 366.26. At the contested permanency planning hearing, the juvenile court terminated both Mother's and Father's parental rights, and the maternal grandmother was identified as R.D.'s prospective

3

adoptive parent.  Both Mother and Father appeal from the order terminating their parental rights.

### III.  DISCUSSION

On appeal, Mother and Father claim that the juvenile court's order terminating parental rights must be reversed and the case remanded to permit additional ICWA compliance.  Specifically, they contend that the department failed to discharge its initial duty of inquiry in contacting extended family members in order to inquire of R.D.'s possible status as an Indian child.  For the reasons set forth below, we agree.

A.  *Legal Background and Standard of Review*

"Congress enacted ICWA in 1978 to address concerns regarding the separation of Indian children from their tribes through adoption or foster care placement, usually in non-Indian homes.  [Citation.]  ICWA established minimum standards for state courts to follow before removing Indian children from their families and placing them in foster care or adoptive homes."  (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1048.)  The Welfare and Institutions Code "creates three distinct duties regarding ICWA in dependency proceedings.  First, from the [department's] initial contact with a minor and his family, the statute imposes a duty of inquiry to ask all involved persons whether the child may be an Indian child.  [Citation.]  Second, if that initial inquiry creates a 'reason to *believe*' the child is an Indian child, then the [department] 'shall make *further inquiry* regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable.'  [Citation.]  Third, if that further inquiry results in a reason to *know* the child is an Indian

4

child, then the formal notice requirements of section 224.3 apply." (*In re D.S.*, at p. 1052; § 224.2)

Following the inquiry stages, the juvenile court may make a finding that ICWA does not apply because the department's inquiry and due diligence were " 'proper and adequate' but no 'reason to know' whether the child is an Indian child was discovered." (*In re D.S.*, *supra*, 46 Cal.App.5th at p. 1050.) However, the duty to inquire is " 'an affirmative and continuing duty,' " and the juvenile court " 'shall reverse its determination if it subsequently receives information providing reason to believe that the child is an Indian child and order the social worker or probation officer to conduct further inquiry.' " (*In re DS.*, at pp. 1048, 1050 ; *In re K.R.* (2018) 20 Cal.App.5th 701, 706 ["[T]he juvenile court has a continuing duty to conduct an inquiry when it has received information that a dependent child might be an Indian child, as defined by ICWA . . . ."].)

A juvenile court's finding that ICWA does not apply includes an implicit finding that social workers fulfilled their duty of inquiry. (*In re Austin J.* (2020) 47 Cal.App.5th 870, 885.) "[W]e review the juvenile court's ICWA findings under the substantial evidence test, which requires us to determine if reasonable, credible evidence of solid value supports the court's order." (*In re A.M.* (2020) 47 Cal.App.5th 303, 314; *In re Austin J.*, at p. 885 [implicit finding that social workers fulfilled their duty of inquiry is reviewed for substantial evidence].)

B. *The Juvenile Court's ICWA Finding Is Not Supported by Substantial Evidence*

On appeal, the focus of both Mother's and Father's claims are that the department failed to interview extended family members as part of its duty of initial inquiry in order

to determine whether any information might exist that would suggest R.D. is an Indian child. In our view, the record supports this conclusion.

Here, by the time of the permanency planning hearing, the department's own reports referenced at least five extended family members residing in California whom the department could have reasonably attempted to contact for the purpose of conducting an ICWA inquiry: R.D.'s paternal grandmother, maternal grandmother, maternal great-grandmother, and two maternal grand uncles.[2] In fact, the department contacted and assessed both the paternal grandmother and the maternal grandmother for placement of R.D. However, the department did not document any efforts to inquire about R.D.'s possible status as an Indian child with any of these relatives. Such a record simply cannot support a finding that the department fulfilled its initial duty of inquiry under ICWA.

On appeal, the department argues that the numerous instances in which Mother and Father denied knowledge of Native American ancestry constitute substantial evidence in support of the juvenile court's finding that ICWA does not apply. However, "[n]othing in section 224.2, subdivision (b), relieves the department of its broad duty to seek . . . information from 'all relevant' individuals [citation] simply because a parent states on the ICWA-020 form . . . , 'I have no Indian ancestry as far as I know.' Such a rule ignores the reality that parents may not know their possible relationship with or connection to an Indian tribe." (*In re Y.W.* (2021) 70 Cal.App.5th 542, 554.) Thus, the

---

[2] The department's reports also suggested there were additional family members who resided out of state but could have been contacted.

fact that a parent disclaims knowledge of potential Native American ancestry is insufficient to support a finding that ICWA does not apply—at least when the record establishes that other family members are available for the department to contact and conduct an inquiry.

Additionally, the fact that Mother and Father stipulated that ICWA does not apply does not absolve the department of its statutory duty. "[T]he Department, not the parent, has the burden to provide information relevant to ICWA, and even a parent under a court order cannot provide information about possible Indian ancestry the parent does not know." (*In re J.C.* (2022) 77 Cal.App.5th 70, 83, fn. 5.) As has been repeatedly recognized, parents often lack knowledge sufficient to determine whether a child is an Indian child. (*In re Antonio R.* (2022) 76 Cal.App.5th 421, 432 ["[P]arents may lack knowledge of a child's Indian ancestry even where the child's extended family members possess strong evidence of the child's possible Indian ancestry."]; *In re Benjamin M.* (2021) 70 Cal.App.5th 735, 743 (*Benjamin M.*) ["A parent challenging ICWA compliance cannot always easily obtain the missing information, even when that missing information is about a parent's possible Indian ancestry."].) If a parent's statement under penalty of perjury that he or she has no knowledge of Native American ancestry is insufficient to relieve the department of its statutory duty of inquiry, we see no reason why a subsequent stipulation signed by a parent could be interpreted to have that effect.[3]

---

[3] Indeed, at least one appellate court has conditionally reversed an order for failure to conduct an adequate inquiry, despite a signed stipulation that ICWA did not apply. (See *In re E.V.* (2022) 80 Cal.App.5th 691, 695, 701.)

7

Thus, the fact that Mother and Father disclaimed knowledge of Native American ancestry did not absolve the department of its initial duty of inquiry, which included the obligation to make reasonable attempts to contact extended family members for the purpose of gathering information potentially relevant to R.D.'s status as an Indian child. Where multiple extended family members are known to the department but the record does not show any attempt to contact them for the purpose of making an ICWA inquiry, the record does not support a finding that the department discharged its initial duty under ICWA.

C. *The Failure To Conduct an Inquiry Was Not Harmless*

The department also argues that, even if it failed to fulfill its duty of inquiry, any such failure should be deemed harmless. We disagree.

We acknowledge that the standard of prejudice requiring reversal in cases involving ICWA is unsettled in the Court of Appeal. (*In re Antonio R.*, *supra*, 76 Cal.App.5th at p.433 ["Courts of Appeal are divided as to whether a parent must make an affirmative showing of prejudice to support reversal . . . ."].) However, this court has adopted the standard of prejudice articulated in *Benjamin M.*, *supra*, 70 Cal.App.5th 735, which rejects both an automatic rule of reversal or a rule that places the burden squarely on the parents to show the likelihood of obtaining a more favorable result (*id.* at pp. 743-745). Instead, we explained that reversal is required "where the record indicates that

there was readily obtainable information that was likely to bear meaningfully upon whether the child is an Indian child." (*Id.* at p. 744.)[4]

The department argues that this case fails to meet the standard of prejudice articulated in *Benjamin M.*, relying principally on *In re Y.M.* (2022) 82 Cal.App.5th 901 (*In re Y.M.*), where the Court of Appeal concluded that a child welfare agency's failure to conduct an adequate inquiry under ICWA was harmless because the record did not suggest any information would bear meaningfully on whether the dependent child was an Indian child (*id.* at pp. 916-918). Specifically, the record in *In re Y.M.* identified three family members whom the child welfare agency failed to interview— a paternal grandfather, paternal grandmother, and paternal uncle. (*In re Y.M.*, *supra*, at pp. 906-907.) However, the Court of Appeal observed that all of these individuals had strong incentives to voluntarily provide whatever relevant information they might have had because the paternal grandfather had affirmatively sought placement of the dependent child in his home and because the dependent child's father lived with the paternal grandmother and paternal uncle. (*Id.* at pp. 917-918.) Given these facts, the Court of Appeal concluded there was a strong inference that these family members did not have information that would bear meaningfully on the question of whether the dependent child was an Indian child. (*Id.* at p. 918.)

---

[4] In adopting this standard of prejudice, this court expressly disagreed with the standard of prejudice articulated in *In re A.C.* (2021) 65 Cal.App.5th 1060. (*Benjamin M.*, *supra*, 70 Cal.App.5th at p. 745.) Accordingly, we decline to adopt the department's suggestion that we should apply the standard of prejudice articulated in that case.

In our view, the facts of *In re Y.M.* are distinguishable from those presented in this case. It is true that, in this case, Mother and Father lived with the maternal grandmother for some time, and the paternal grandmother had been in contact with the department in order to be assessed for placement. However, the record in this case also suggests there were multiple other relatives that should have been contacted for the purpose of conducting an ICWA inquiry, including a maternal great-grandmother and maternal grand uncles. While the maternal grandmother reported a close relationship with these relatives, there was no indication in the record that Mother reported a similar relationship or that any of these relatives had any incentive to voluntarily provide information to the department regarding potential Native American ancestry. Thus, *In re Y.M.* is distinguishable on its facts.

The department also argues that under *In re S.S.* (2022) 75 Cal.App.5th 575 and *In re J.W.* (2022) 81 Cal.App.5th 384, any failure to conduct a proper inquiry under ICWA was harmless because, ultimately, the maternal grandmother was deemed R.D.'s prospective adoptive parent. In both of these decisions, the appellate courts concluded that a failure to inquire was harmless because, even if the dependent child had been found to be an Indian child, the ICWA contains a statutory preference for adoptive placement of an Indian child with an extended family member. (*In re S.S.*, at p. 582; *In re J.W.*, at pp. 390-391.) We respectfully disagree with the reasoning in these cases.

It is true that Title 25 United State Code section 1915 provides, in part, that "[i]n any adoptive placement of an Indian child under State law, a preference shall be given, in the absence of good cause to the contrary, to a placement with (1) a member of the

child's extended family; (2) other members of the Indian child's tribe; or (3) other Indian families." (25 U.S.C. § 1915(a).) However, subsection (c) of that same statute also provides that, "[i]n the case of a placement under subsection (a) or (b) of this section, if the Indian child's tribe shall establish a different order of preference by resolution, the agency or court effecting the placement shall follow such order . . . ." (25 U.S.C. § 1915(c).) Unless a proper inquiry is conducted, a reviewing court has no reason to conclude that the dependent child is an Indian child in the first instance. Further, any potential tribe with an interest in a dependent child will not have notice of the proceedings and cannot intervene to inform the juvenile court whether the tribe has established a different order of preference for placement. Thus, where the child welfare agency has failed to conduct an adequate ICWA inquiry, we see no basis to conclude that the placement preference set forth in Title 25 United States Code section 1915(a) will apply, and the statute cannot be relied upon to find any error harmless.[5]

In considering the prejudicial effect of a social services agency's failure to discharge its duty of inquiry under the ICWA, this court has repeatedly held that the

---

[5] Further, we cannot assume that any specific family member will always have an incentive to disclose Native American ancestry. As observed by our colleagues in *In re J.C.* (2022) 77 Cal.App.5th 70, it is equally possible that, "[a]s the prospective adoptive parent, the grandmother's incentive would be *not* to provide any information suggesting the child was an Indian child, so that she could adopt the child without any potential interference from the tribe." (*Id.* at p. 84.) Certainly, this would be the case if the prospective adoptive family member is aware of potential tribal membership but is also aware the relevant tribe has established a different order of preference for placement. This may also be the case where the prospective adoptive family member has knowledge that a different family member belongs to a different tribe with a stronger interest in the dependent child.

failure to comply with an *initial* duty of inquiry is deemed prejudicial in the absence of information in the record to suggest otherwise. (*In re K.R.* (2018) 20 Cal.App.5th 701, 709; *In re N.G.* (2018) 27 Cal.App.5th 474, 484; *Benjamin M.*, *supra*, 70 Cal.App.5th at pp. 744-745.) As we have previously explained: "Where the record does not show what, if any, efforts the agency made to discharge its duty of inquiry [citations], . . . the burden of making an adequate record demonstrating the court's and the agency's efforts to comply with ICWA's inquiry and notice requirements must fall squarely and affirmatively on the court and the agency"; and, "as a general rule, we will find the appellant's claims of ICWA error prejudicial and reversible." (*In re N.G.*, at p. 484.)

Here, the record contains no indication that the department made efforts to contact known extended family members for the purpose of conducting an initial ICWA inquiry. Given such a silent record, under the general rule we expressed in *In re N.G.*, *supra*, 27 Cal.App.5th 474 we cannot conclude the department's failure to comply with its initial duty of inquiry under ICWA was harmless.

D. *We Decline to Consider Postjudgment Evidence*

Finally, on September 26, 2022, the department filed a motion to augment the record and dismiss the appeal as moot on the basis of postjudgment evidence. Specifically, the department requests that we consider the declaration of a social worker, stating that a subsequent ICWA inquiry had been conducted with the paternal grandmother, paternal grandfather, and maternal grandmother, which resulted in all three completing ICWA-020 forms disclaiming any knowledge of Native American ancestry. For the reasons set forth below, we deny the motion.

12

First, in a recently published decision, this court expressly disapproved of the very procedure the department has used here to seek dismissal of the appeal. (*In re Ricky R.* (2022) 82 Cal.App.5th 671, 680-683.) As we explained in that decision, a postappeal declaration by a social worker is not the proper subject of judicial notice, augmentation, or consideration under Code of Civil Procedure section 909. (*Id.* at pp. 681-682.)

While postjudgment evidence can sometimes be relevant to a determination of whether an appeal is moot or any alleged error is harmless, a finding that ICWA does not apply is a factual determination that should be made by the juvenile court in the first instance. As we explained in *In re Ricky R.*, *supra*, 82 Cal.App.5th 671, when further ICWA inquiries have been conducted resulting in additional information, the appropriate procedure is for the department to "stipulate to a conditional ICWA reversal and an immediate issuance of the remittitur. [Citation.] That way, the juvenile court may make ICWA findings on the basis of the new evidence, and there is no question about its jurisdiction." (*Ricky R.*, at p. 683; see *In re M.B.* (2022) 80 Cal.App.5th 617, 629 ["[T]he Department's proper course of action was to stipulate to a conditional reversal with directions for full compliance with the inquiry and notice provisions of ICWA and related California law . . . ."].)

Second, as we have already explained above, the record in this case indicates that the extended family members who were readily available for the department to conduct an ICWA inquiry include a maternal great-grandmother and two maternal grand uncles. The proffered postjudgment evidence offered by the department in support of its motion is silent as to these individuals. Thus, the department's proffered postjudgment evidence

13

is, at best, incomplete with respect to the very issue on which it asks this court to make a factual determination under Code of Civil Procedure section 909. Under the circumstances, we do not believe it would be an appropriate exercise of discretion to consider such evidence for the purpose of making factual findings. (*Philippine Exp. & Foreign Loan Guar. Corp. v. Chuidian* (1990) 218 Cal.App.3d 1058, 1090 ["The power to take evidence in the Court of Appeal is never used where there is conflicting evidence in the record . . . ."].) We, therefore, deny the department's motion to augment the record and deny its motion to dismiss.

## IV. DISPOSITION

The motion filed September 26, 2022, to augment the record, consider postjudgment evidence, and dismiss the appeal is denied.

The order terminating Mother's and Father's parental rights is conditionally reversed. The matter is remanded to the juvenile court with directions to comply with the inquiry provisions of ICWA and of Welfare and Institutions Code sections 224.2 and 224.3. If, after completing the initial inquiry, neither the department nor the juvenile court has reason to believe or reason to know that R.D. is an Indian child, the order terminating parental rights shall be reinstated. If, however, the department or the juvenile court discovers a reason to believe that R.D. is an Indian child, the court shall proceed accordingly.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

FIELDS

J.

14

We concur:

MILLER
              Acting P. J.


CODRINGTON
               J.